Pro Se 5

_____ FILED          _____ ENTERED
_____ LODGED         _____ RECEIVED

**MAY 22 2019** SP

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

CASE NO. 2:19-cv-00623 DWC RAJ
[to be filled in by Clerk's Office]

**COMPLAINT FOR A CIVIL CASE
ALLEGING NEGLIGENCE**
(28 U.S.C. § 1332; Diversity of
Citizenship)

Jury Trial: ☐ Yes   ☐ No

_____

RITA CAGLIOSTRO _____

_____,

                    Plaintiff(s),

        v.

_____

UNITED STATES GOVERNMENT

_____,

                    Defendant(s).

## I.    THE PARTIES TO THIS COMPLAINT

A.    Plaintiff(s)

*Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.*

| | |
|---|---|
| Name | Rita Cagliostro (American residing in King County, WA) |
| Street Address | 212 Alaskan Way S205 |
| City and County | Seattle, King |
| State and Zip Code | WA, 98104 |
| Telephone Number | 503-960-6345 |

1

*Pro Se 5*

B.     Defendant(s)

*Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known). Attach additional pages if needed.*

Defendant No. 1

| | |
|---|---|
| Name | Department of Social and Health Services |
| Job or Title *(if known)* | CSO, DCYF, CPS, DVR (personnel/employees) |
| Street Address | 2106 2ND Avenue |
| City and County | Seattle, King |
| State and Zip Code | WA, 98121 |
| Telephone Number | |

Defendant No. 2

| | |
|---|---|
| Name | Multnomah Circuit Court |
| Job or Title *(if known)* | Judicial officers |
| Street Address | 1021 SW 4th Avenue |
| City and County | Portland, Multnomah |
| State and Zip Code | OR, 97204 |
| Telephone Number | 503-988-3269 |

Defendant No. 3

| | |
|---|---|
| Name | Forrest R. Collins |
| Job or Title *(if known)* | Mediator |
| Street Address | 5200 SW Meadows Rd Ste 150 |
| City and County | Lake Oswego, Clackamas |
| State and Zip Code | Oregon, 97035 |
| Telephone Number | 503 222-2926 |

*Pro Se 5*

Defendant No. 4

| | |
|---|---|
| Name | Courts involved are all in breach |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | OR, WA |
| Telephone Number | |

## II.    BASIS FOR JURISDICTION

Federal courts are courts of limited jurisdiction (limited power).  Generally, only two types of cases can be  heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties.  Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case.  Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case.  In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction?  (check all that apply)

☒   Federal question                        ☒   Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

A.    If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

_____

_____

_____

3

*Pro Se 5*

B.      If the Basis for Jurisdiction Is Diversity of Citizenship

        1.      The Plaintiff(s)

           a.   If the plaintiff is an individual.

The plaintiff (*name*) Rita Cagliostro, is a citizen of the State of (*name*) Washington.


        2.      The Defendant(s)

           a.   If the defendant is an individual.

The defendant,  (*name*) Click here to enter defendant's name., is a citizen of the State of (*name*) Click here to enter state.

        If the defendant is a corporation.

  The defendant,  (*name*) Department of Social and Health Services, Multnomah Circuit Court, and as stated that the officers involved are said employed within the divisions of the related cases as: "Officers of the court in general includes any **judge**, law clerk, **court clerk**, lawyer, **investigator and lack thereof**, probation officer, referee, legal guardian, **parenting-time expeditor**, **mediator's**, evaluator, administrator, special appointee, **and/or anyone else whose influence is part of the judicial mechanism**."

LAST STATUS POSITION: Specifically those in the related cases affecting the tort claims are:

Named as: **Yelena Kazatskaya , and from the department in which she called from the phone number 206-389-3400 OAH,**

**she called literally at 1:51pm on May 20, 2019, during clinical mental health therapy, with a fly by seat option she followed up with in an email:**

**"Our office tried but wasn't able to get a hold of you over the phone to discuss Suitable Representation Accommodation. Because of that, Judge Worthington would like to continue this case. Do you have any objections?"**

**While I Rita Cagliostro am under duress and short-term memory affecting my relay time within a 3-hour span. No other phone calls have come from this department-- prior.**

1. U.S. Court for the Western District of Washington, Rita Cagliostro v. Forrest R. Collins, Case No. 2:18-cv-00425RSM  (officers involved and through Ninth Circuit, SF)

Pro Se 5

1

2. Ninth Circuit Court of Appeals, San Francisco, California, Rita Cagliostro v. Forrest R.

2

Collins, Case No. ___18 - 3573-8___ **(officers involved are licensed in Washington,**

3

**King County)**

4

3. King County Superior Court, Rita Cagliostro v. Charles Alec Winton, Case No.

5

___16-3 - 05790-3SOA___ (officers involved)

6

4. Court of Appeals, Washington State, Division One, Rita Cagliostro v. Charles Alec Winton,

7

Case No. ___76377-6-1___ (officers involved)

8

9

5. Multnomah Circuit Court, Oregon, Charles Alec Winton v. Rita Cagliostro (formerly Rita

Cagliostro v. Charles Alec Winton, but for fraud/court error filings) Case No. 0903-

10

62138 ___0903-62138___ (officers involved)

11

(Including Family Court Services, Mediation Department)

12

6. Court of Appeals, Salem Oregon, Charles Alec Winton v. Rita Cagliostro (formerly Rita

Cagliostro v. Charles Alec Winton, but for fraud/court error filings) Case No.

13

___A169717___ (officers involved)

14

7. Nevada Court, Las Vegas, Nevada, Family Court and Court Services, Charles Alec Winton

15

and Rita Cagliostro, Case No. ___D - 13- 487266-F___ (officers involved)

16

17

8. Rita Cagliostro v. DVR, DCYF, and DSHS (Office of Administrative Hearings) (officers

involved)

18

           and, are incorporated under the laws of the State of (*name*) Washington, Nevada, Oregon,

19

and have their principal place of business in the State of (*name*) Washington, Nevada, Oregon.

20

           *(If more than one defendant is named in the complaint, attach an additional page*

21

*providing the same information for each additional defendant.)*

22

           ***Each defendant by name, will be provided upon an extension of time to provide.***

23

24

### III.   THE AMOUNT IN CONTROVERSY

The amount in controversy-the amount the plaintiff claims the defendant owes or the amount at stake-is more than $75,000, not counting interest and costs of court, because (*explain*):

My diversity issues aside of Oregon State Bar/PLF claim number 060213 in the amount of $5,200,000, which statement of damages describes amongst other damages, a federal student loan amount of $85,000 plus interest, pain and suffering, court/s filing fees, and More inconsolable pain and suffering now. I have been being extended now over 36 months with zero results, except more time, more time, more time, more...NEGLECTING ORS 12.040 (4), Child Protective Services Report 1607917 (Maltreatment –12-11-2013 ""'"""STILL"), ORS 163.245, *2017 ORS 12.115*. Meanwhile, dealing with other family personal issues in Seattle (stress on top of stress on top of stress, on and on). **Point blank,** for some ungodly reason Officer RSM is ignoring "**ORS 12.115 (1) In no event shall any action for negligent injury to person or property of another be commenced more than 10 years from the date of the act or omission complained of.**" Now I'm just like a dog with steak knives all on my back, being poked over see if I'm slumped over no movement left...No matter how unprofessional each employee involved within this particular case, whether over loaded with work or not, that to me does not make it right. The stalemate condition is a very unfair societal thing to do to me.

### IV.   STATEMENT OF CLAIM

*Write a short and plain statement of the claim.  Do not make legal arguments.  State as briefly as possible the    facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.*

On (*date*) March 06, 2019 at (*place*) Department of Social and Health Services, 2106 2nd Avenue, Seattle, WA 98121, the defendant(s): (1) performed acts that a person of ordinary prudence in the same or similar circumstances would not have done; or (2) failed to perform acts

*Pro Se 5*

1  that a person of ordinary prudence would have done under the same or similar circumstances

2  because (*describe the acts or failures to act and why they were negligent*).

3

4  Employee Andre, and another employee, have done everything to avoid helping me as a disabled

5  woman understand, and deny me, yet not provide me an actual Notice of Denial as per Chea of

6  the NW Justice Project stated, I have not obtained and the records I have shown are not the

7  particular Notice of Denial on benefits. The benefits to which include Food assistance,

8  TANF/SFA, Disability Assistance (ETR "Exception To Rule" WAC 388-440-0001). I have

9  ethically, legally, lawfully requested representation of counsel over several dozen times now,

10 Which entails, credits due for "practicum hours, on trained on the bench" for a Master's of Law,

11 to upgrade my law degree of Bachelor of Science in Legal Studies/Research. The incorrect

12 language used by DSHS employees including Andre, verbally state that I have to prove

13 "physically" as **operative word**, which **does not exist in the notice** of providing currect valid

14 court orders, child support orders, that my child/now teenager, resides with me.  This mis-use of

15 the word "physically" is a word that the DSHS are unable to cite in contrast to the related cases

16 known as (Rita Cagliostro v. Forrest R. Collins) Negligence case no. 2:18-cv-00425RSM filed

17 March 27,2018 (filed on time and not frivolous for the clerks asking amount of $505 payment

18 due? (forma pauperis money that I am unable to afford) to proceed in Ninth Circuit as requested

19 by the Ninth Circuit considering my financial predicament relaying to each case filed and as a

20 respondent to the such related cases), presently pending in COA-Ninth Circuit as moot.  Which

21 is related to a prior case filed on September 22, 2016 in Superior Court King County RCW

22 6.36.025 to **vacate** the frauds foreign orders, and for custodial interference and as law allows to

23 counter-suit to vacate the frauded orders of yet a prior case known as the Multnomah Circuit

24 Court, that used the Judges manual incorrectly on the same question of "physically" to which

Pro Se 5

1  both are in discrimination for using the word "physically" to describe two separate legal actions.

2  One being child "must" be present in the state, before an emergency custody jurisdiction can be

3  made to modify an order and the second being child resides with mother in Seattle, Washington,

4  due to the improper use of the law to establish the **child "must " be present in the state**

5  **law violated in Oregon** when child and mother had been *ejected* from the land in Oregon

6  *and evicted* from the place of residence that by the way both were legally entitled to reside in,

7  but for further fraud upon the court on another OAH hearing status for a probate matter causing

8  forensic record and OAH final order to have been violated for fraudulently being used to falsely

9  portray that the residence owner was schizophrenic and child and Rita Cagliostro were in

10  possession of the residence incorrectly. Child and Rita Cagliostro complied and moved to Las

11  Vegas, Nevada to apartment provided by family member to obtain safety from the ejectment and

12  eviction pending matters and in the lawsuit against Forrest R. Collins for improper services and

13  unearned income services on pending child support that was owed to Rita Cagliostro funneled by

14  Forrest R. Collins to self-enrichment scheme. Long story short, the child was not present in

15  Oregon as of September Friday the 13th 2013 due to the ejectment from the land and eviction

16  from the residence, and on September 18th, 2013 a *conferred* ex-parte temporary emergency

17  jurisdiction hearing was held after child and Rita Cagliostro had already arrived to Nevada and

18  enrolled child into Lois Craig Elementary School on September 18, 2019 after immunizations on

19  September 17, 2013.  That temporary emergency custody was denied to Forrest R. Collins and

20  his client, the opponent to Rita Cagliostro.  Then a SECOND status quo hearing was set for

21  October 24, 2013, to which the judge Svetkey denied Rita Cagliostro PHONE ATTENDANCE

22  for October 24, 2013 and then held a *NON-Conferred* secret ex-parte for a temporary emergency

23  jurisdiction order, that was then used on October 29, 2013 to *AGAIN* SECRETLY remove child

24  out of Nevada school classroom.  Which led to further issues for Rita Cagliostro already under

*Pro Se 5*

1   vocational rehabilitation for a neck/brain injury from an auto accident stemming from November

2   11, 2009 that Rita Cagliostro was trying to rehab from for placement for work, but wound up

3   unable to in Seattle, WA after Inter-cruises Shoreline and Port Services requested doctors note

4   and instead, Rita Cagliostro was unable to obtain that note and has been attending therapy ever

5   since in Seattle, Washington, trying to clear up the domicile issues to obtain child back from the

6   frauds upon the court caused from the actions of the said mediator Forrest R. Collins in a

7   declaratory judgment pending COA San, Francisco negligence's. The DSHS is also in the middle

8   of the domicile issue for negligence on the Child Protective Order from Nevada on Maltreatment

9   of child and the negligence to accept that "child resides with mother" as final order from Judge

10  Jean Rietchel of OAH/WA in November 23, 2016, Child Support Enforcement/Oregon (police

11  report) and questionnaire answered by Rita Cagliostro with Internal Revenue Service employees

12  as of the 2013 tax year.

13          Point blank the government cannot jump outside the use of grammar words to cause the

14  illegal removal of my child, without proper mechanisms. Grammatically-unlawfully speaking, is

15  what the government has done.

16

17          The acts or omissions caused or contributed to the cause of the plaintiff's injuries by

18  *(explain)*

19

20  The said courts are all in breach in the egregious abusive, unfair debt collection practices and

21  failure to act on the returning child to Rita Cagliostro (disabled) who filed all claims and suits on

22  time, and has not been given any relief. Since October 24, 2013.   RCW 6.36.025 to **vacate** the

23  frauds foreign orders

24          _____

*Pro Se 5*

1

2

### V.   RELIEF

3

*State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do*
*not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing*
4
*at the present time. Include the amounts of any actual damages claimed for the acts alleged and*
*the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts,*
5
*and the reasons you claim you are entitled to actual or punitive money damages.*

6

I Rita Cagliostro have made a claim for $5,200,000 in the frauds, errors, mistakes etc. Law suit

7

against Forrest R. Collins and that were made from Forrest R. Collins up until February 13,

8

2014, April 11, 2017 AND all unearned premium he funneled from the unearned income services

9

he provided and evidence provides collected the funneled premiums up through the year 2019.

10

To which Rita Cagliostro attaced here laws that support the timely filed lawsuit, to which is

11

placed on moot and through Judge Ricardo Salazar Martinez, not acknowledging the laws

12

attached?  In addition, I Rita Cagliostro have been in pain and suffering in these passages to have

13

the licensed professionals actually acknowledge the faults involved. Therefore, I Rita Caglisotro

14

have also addressed each division with an additional $10,400,000 from each department as

15

double for failure to act. As any prudent judicious personnel could under the claims for a

16

kidnapped child filed within the guidelines of the questionnaires provided by the Internal

17

Revenue Service, Fair Debt Collection and 28 US Code 1738A. For which Rita Cagliostro is

18

inconsolable, intolerable, and unable to retreat. Pursuing feverishly, diligently pounding through

19

each brain trigger aside of from neck/brain injury auto accident on record prior to the lawsuits.

20

Forrest R. Collins needs to address the mediation to resolve the $5,200,000 PLF claim No.

21

060213 and the courts breaches of stale mate dragging on this problem not addressing the

22

wounds by which define me Rita Cagliostro affecting my life and career life. My life with my

23

own mom also Anita and my child now teenager in this matter.

24

Pro Se 5

EXIBITS:

1. Maltreatment (Child Protective Services, Nevada)

2. RCW 6.36.025, ORS 12.115 (1), 12.040 (4),

3. proposed Settlement, Statement of Damages, Declaratory Judgment

## VI.  CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: May 22, 2019

Signature of Plaintiff

Printed Name of Plaintiff:  Rita Cagliostro

212 Alaskan Way S205

Seattle, WA 98104

503-960-6345

08-25-2015
09:07
CFS624

Client ID
0524356672

P884

Exinit M-22

21

Case Number: 0
Report Number: 1607917

**UNITY - All Program Areas**
**Clark County Department of Family Services**
**Child Protective Services (CPS) Report Summary**

ANSWR

## Family Relationships

## Legal Status History

## Allegation Summary

**Date Received:** 12-11-2013   **Time Received:** 13:41
**Referral Narrative:**
Child: Angel Anna Star Winton (9)
Mother: Rita Cagliostro
Phone number: 

Father: Charles Winton (whereabouts unknown)

1. What is the extent of child maltreatment?
Child Angel was withdrawn from school on October 29th by someone that did not have authority to do so and mother has not seen the child since this day. It is unknown where the child is at this time.

2. What are the circumstances surrounding the child maltreatment?
Source reported the following information via telephone:

On October 29, 2013, child Angel was "illegally withdrawn" from ████ Elementary School in North Las Vegas, NV. The Principal ████ allowed someone that was not authorized to withdraw the child from the school on this day without notifying the mother. When mother contacted the principal, she said that she had been following a court order and that is why she permitted someone else to take child Angel from school on this day. It is unknown who was the one to take the child. ████ told mother that a Lieutenant from the Police Department would call mother. ████ Lieutenant did call mother and spoke with her for 20 minutes on the phone. After this, mother found out that the person that she spoke to did not exist. Mother has filed a public concern and has contacted all local law enforcement agencies. Mother believes that father, Charles Winton may have taken the child to Oregon, but it is unknown for sure.



Exhibit: F-11
page 7-11-2017
See Exhibit
B-22

# 2017 ORS 12.040[1]
# Limitations of suits generally

- **land patent suits**
- **defense of possession by equitable title**
- **suit on new promise, fraud or mistake**

**(1)** A suit shall only be commenced within the time limited to commence an action as provided in this chapter; **and** a suit for the determination of any right or claim to or interest in real property shall be deemed within the limitations provided for actions for the recovery of the possession of real property.

**(2)** No suit shall be maintained to set aside, cancel, annul or otherwise affect a patent to lands issued by the United States or this state, or to compel any person claiming or holding under such patent to convey the lands described therein, or any portion of them, to the plaintiff in such suit, or to hold the same in trust for, or to the use and benefit of such plaintiff, or on account of any matter, thing or transaction which was had, done, suffered or transpired prior to the date of such patent, unless such suit is commenced within 10 years from the date of such patent.

**(3)** This section shall not bar an equitable owner in possession of real property from defending possession by means of the equitable title; **and** in any action for the recovery of any real property, or the possession thereof, by any person or persons claiming or holding the legal title to the same under such patent against any person or persons in possession of such real property under any equitable title, or having in equity the right to the possession thereof as against the plaintiff in such action, such equitable right of possession may be pleaded by answer in such action, or set up by bill in equity to enjoin such action or execution upon any judgment rendered therein; **and** the right of such equitable owner to defend possession in such action, or by bill for injunction, shall not be barred by lapse of time while an action for the possession of such real property is not barred.

**(4)** In a suit upon a new promise, fraud or mistake, the limitation shall only be deemed to commence from the making of the new promise or the discovery of the fraud or mistake.

[1] Legislative Counsel Committee, *CHAPTER 12—Limitations of Actions and Suits*, https://www.oregonlegislature.gov/bills_laws/ors/ors012.html (2017) (last accessed Mar. 30, 2018).

# 2017 ORS 12.115[1]
# Action for negligent injury to person or property

**(1)** In no event shall any action for negligent injury to person or property of another be commenced more than 10 years from the date of the act or omission complained of.

**(2)** Nothing in this section shall be construed to extend any period of limitation otherwise established by law, including but not limited to the limitations established by ORS 12.110 (Actions for certain injuries to person not arising on contract). [1967 c.406 §2]

---

[1] Legislative Counsel Committee, *CHAPTER 12—Limitations of Actions and Suits*, https://www.oregonlegislature.gov/bills_laws/ors/ors012.html (2017) (last accessed Mar. 30, 2018).

PROPOSED SETTLEMENT

Rita Cagliostro (PLAINTIFF) v. Forrest R. Collins (DEFENDANT/S)

CASE NO. _____

PROPOSED SETTLEMENT COMPONENTS FOR CLAIM OF: <u>Rita Cagliostro</u>

DATED: _____

The negotiated structured settlement for: <u>Rita Cagliostro</u> will follow the styled reference below on structuring the tax free, tax deferred, college fund, trust protection set up, and annuity payments portions.

**Volume 15, Number 3**

**July/August 1999**

Negotiating a Structured Settlement

Source:
https://www.americanbar.org/newsletter/publications/gp_solo_magazine_home/gp_solo_magazine_in
dex/wagner.html

1. " The structured settlement proposed will yield <u>$6,000</u> per month (Initials needed here) by both _____plaintiff and _____defendant, for her life or 30 years (guaranteed for 30 years to protect her family against her early demise).
2. A college fund of <u>$10,000</u> (Initials needed here) by both _____plaintiff and _____defendant, will be paid in August of each year in which her daughter will be the ages 18, 19, 20, and 21.
3. Finally, a series of guaranteed lump-sum payments will be paid every five years through the next 30 years. The total payments through the claimant's 40-year life expectancy is $3.8 million (Initials needed here) by both _____plaintiff and _____defendant. The annuity needed to generate these benefits would cost a premium of <u>$982,965</u> or $_____, agreed upon by the third-party structure settlement expert, (initials needed here) _____ by third-party structure settlement expert.
4. In addition to the structured portion, will the defendant/insurer be offering <u>$500,000</u> up front in cash for all immediate family needs, attorney fees, and past expenses of any nature? Yes or No (circle one) _____ initials needed here.
5. The cover letter accompanying the proposal states that all of the payments of the settlement may be tax-free? That would mean that the estimated $<u>717,035</u> deny or accept (circle one) _____ (Initials needed here) by both _____plaintiff and _____defendant, growth and or different amount here $_____ (Initials needed here) by both _____plaintiff and _____defendant, in the

PROPOSED SETTLEMENT

structured settlement would pass to the claimant without income taxation, which is a significant benefit.

- NOTE: (It is extremely important for you to verify that the benefits will be tax-free and to negotiate and document the settlement in a manner that does not jeopardize its tax-free status. It does not matter whether you are the claimant's lawyer or the defendant/insurer's lawyer. It is in both parties' interest to verify and preserve the tax-free status of the structured settlement proposal. Tax-free status enhances the value of the offer and helps to bridge the gap between the litigants.)

- NOTE: (The parties to the Thalidomide settlements were hoping that these settlements would be treated as tax-free and not tax-deferred, since at that time the Internal Revenue Code (I.R.C.) § 104 (a)(2) excluded from income "the amount of any damages received (whether by suit or agreement) on account of personal injuries or sickness." However, the I.R.C. was silent as to "payments over time," which would later be called "structured settlements" or "periodic payments." The Thalidomide litigants felt that their best chance of receiving tax-free status would be to avoid constructive or actual receipt of the annuity by the claimant.)

(Initials needed here) by both _____ plaintiff and _____ defendant.


NOTE: **Third-Party Assignments**

- I.R.C. § 130 paved the way for third-party assignments because it clarified the tax consequences to the *third-party assignee* of ownership of the funding asset (annuity or U.S. government obligation). Other arrangements were developed later to accomplish the same objectives in claims that do not qualify under § 130.

- Among these are non-qualified assignments, which are used in limited circumstances, and reinsurance agreements, which can be used only when the *original obligation is insured*. Both are valid alternatives; but the vast majority of structured settlement activity today occurs via the qualified assignment.

**The Documents**

6. After the particulars of the settlement are negotiated, the settlement agreement and release must be drafted.

Normally, the structured settlement broker will supply the forms necessary, and for the most part, they are fairly standard. _____ Initials needed here (by settlement broker)

These agreements differ from cash settlement documents in the following ways:

7. The consideration paragraph is split between the cash and the periodic payments portion. There is usually a reference to the I.R.C. § 104 (a)(2), which governs the damages being settled, and any allocation to other elements of damages that may be taxable. (This will be discussed below.)

8. The settlement agreement and release contains a statement that the claimant cannot alter the amounts or timing of the payments, nor can the claimant sell, mortgage, encumber, anticipate, or assign the benefits.

PROPOSED SETTLEMENT

9. The settlement agreement and release contains a beneficiary paragraph governing the succession of guaranteed payments.

10. The settlement agreement and release contains a provision that the claimant specifically consents to the qualified assignment to the assignee, which the defendant/insurer may execute; and that upon such assignment, the claimant will look only to the assignee for performance since the original defendant/insurer will be released.

11. The settlement agreement and release contains a provision that the defendant/insurer or assignee may purchase an annuity from the annuity provider and shall maintain all rights of ownership.

12. The settlement agreement and release contains a statement as to how the obligation to make each payment shall be discharged.

13. All of the above are necessary to define the obligation to make the future periodic payments.

14. At the same time that the settlement agreement is executed, the qualified assignment is signed by the defendant/insurer and sent to the assignee for its signature. Normally, this is a two-party document between the defendant/insurer and the assignee. Occasionally, the claimant also will be required to sign the qualified assignment, as some of the forms have additional release language requiring the claimant's consent.

- NOTE: Another element common to personal injury claims that needs to be classified is prejudgment interest.
- NOTE: It is advisable to make a reasonable allocation in order to establish a defensible position as to which amounts are taxable and which are not—and the rationale used.
- NOTE: It might still be desirable to structure a large punitive element to make it *tax-deferred*.
- NOTE: It might be better to receive $75,000 per year for the next 30 years.

The settlement broker does understand that these agreements differ based on details of #7 through #14 above in the following ways stated, _____ Initials needed here (by settlement broker) _____ Initials needed here (by Claimant).

**Structuring Damages**

15. What types of damages can be structured to yield a tax-free return? Aside from workers' compensation claims under § 104 (a)(1), the answer was clarified by the 1996 italicized additions to § 104 (a)(2): "The amount of any damages *(other than punitive damages)* received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal *physical* injuries and *physical* sickness." Obviously, Congress was trying to weed out some elements of damages by disqualifying them from § 104.

16. For years the courts had flip-flopped and different jurisdictions had disagreed about the nature of punitive "damages." Are they "damages" or "penalties"? If penalties, they are taxable.

PROPOSED SETTLEMENT

Congress weighed in on the "penalty" side. The only exception in which punitive damages are tax-free occurs when such damages are received in a wrongful death action if the applicable state law allows *only punitive damages to be awarded* in a wrongful death action.

17. By adding the word "physical" twice, Congress disqualified damages that did not have their origin in a *physical injury* or *physical sickness*, such as employment discrimination or injury to reputation claims. The act redefined "emotional distress" as a *non-physical* injury or sickness for the purpose of determining the origin of the claim. It is the origin of the claim that governs whether it qualifies.

18. But, if the origin of the claim test is satisfied, *all damages*, except punitive damages, that flow from the claim are excluded from income *whether or not the recipient of the damages is the injured party*.

19. "All damages" include economic damages (loss of income) and noneconomic damages (pain and suffering and even emotional distress). Derivative claims—such as loss of consortium, wrongful death actions, or bystander claims—are also embraced despite the fact that the claimant may not be the person physically injured. Since all of these damages qualify under § 104, they are tax-free and assignable under § 130. Another element common to personal injury claims that needs to be classified is prejudgment interest. This element is taxable. It is interest on the damages and not an element of damage itself.

20. In many claims, it is common to have all of these elements: loss of income, loss of consortium, pain and suffering, punitive damages, bystander claims, and prejudgment interest. If all of these elements are pled, the settlement agreement must allocate the various segments of the consideration to the various elements of "damages." The tax treatment of "loss of income" falls under § 104 (a)(2), whereas "prejudgment interest" is taxable. Even though an allocation between the litigants is not binding on the IRS, it is advisable to make a reasonable allocation in order to establish a defensible position as to which amounts are taxable and which are not—and the rationale used. Otherwise, the IRS would be free to allocate as it deems appropriate subject to rebuttal by the claimant.

21. Some elements of personal injury claim's still can be structured, even though they do not qualify under § 104. Non-qualification just means that it will not be tax-free and cannot be assigned under § 130. It might still be desirable to structure a large punitive element to make it *tax-deferred*.

22. Suppose you have a claim with a potential for $1 million in punitive damages. If you are successful, can you imagine the tax bite on $1 million taken in one year? It might be better to receive $75,000 per year for the next 20 years. Its $1.5 million future payout would cost the defendant/insurer only $900,000. But the cumulative tax on $75,000 each year is considerably lower than that on $1 million in one year because the *tax rate* is so much lower for $75,000.

• NOTE: Quite often it is desirable to use a trust to accomplish specific objectives, such as additional spendthrift protection, or in order to manage the life-style of a severely impaired claimant.

PROPOSED SETTLEMENT

The settlement broker does understand that these agreements differ based on details of #15 through #22 above in the following ways stated, _____ Initials needed here (by settlement broker) _____ Initials needed here (by Claimant).

**Tax Deferment**

23. A "cash basis" taxpayer can acquire tax-deferred treatment on amounts to be received in the future as long as he or she does not have actual or constructive receipt of the asset (if any) purchased to fund those payments or the premium paid. It must be an arm's-length transaction that creates the obligation to pay the future payments. It should be negotiated on the same manner as a tax-free settlement, with the defendant/insurer handling the premium and asset purchase.

24. Negotiating a structured settlement in this situation can obviously be advantageous to both sides. One problem: If it does not qualify under § 104, it does not qualify for a § 130 qualified assignment.

25. How will it be orchestrated by the settlement broker expert?

_____

_____

The settlement broker does understand that these agreements differ based on details of #23 through #25 above in the following ways stated, _____ Initials needed here (by settlement broker. Settlement broker expert must answer question #25.) _____ Initials needed here (by Claimant).

**Non-Qualified Assignments**

26. This is the function of the non-qualified assignment programs and the reinsurance agreements mentioned earlier. A non-qualified assignment is established in a similar manner as a qualified assignment without the references to §§ 104 and 130. A reinsurance agreement is set up similar to a non-qualified assignment except that there is no mention of either an assignment or an annuity. Through a reinsurance agreement, the reinsurer merely assumes the obligation and retains the entire premium.

27. New variations and new products evolve periodically. Each product has its own function and restrictions. If you introduce the right product to the appropriate situation, the result can be extremely gratifying. Since these products are being developed for an emerging non-qualified market, expert tax advice should be sought for each specific use.

PROPOSED SETTLEMENT

The settlement broker does understand that these agreements differ based on details of #26 through #27 above in the following ways stated, _____ Initials needed here (by settlement broker) _____ Initials needed here (by Claimant).

**Structures and Trusts**

28. Sometimes it is advantageous to combine the tax efficiency of a structured settlement with the flexibility of a trust. Quite often it is desirable to use a trust to accomplish specific objectives, such as additional spendthrift protection, or in order to manage the life-style of a severely impaired claimant. A trust can use the talents of the trustee and, if authorized, can hire other disciplines, such as medical care managers, to accomplish the trust objectives. However, if all of the settlement proceeds are initially dumped into the trust, any retained earnings each year will be taxed in the trust at fairly higher rates, a considerable drain on the trust's resources.

29. A better way to maximize resources is to seed the trust with a small amount initially and to set up a structured settlement to periodically re-seed the trust every one or two years; or at specific times, such as the college years. The structured settlement grows tax-free outside of the trust, sheltering the resource from excessive taxation. Once the funds are paid into the trust, they can be used to forward the purposes of the trust. A considerable amount of unnecessary taxes can be saved with this arrangement.

The settlement broker does understand that these agreements differ based on details of #28 through #29 above in the following ways stated, _____ Initials needed here (by settlement broker) _____ Initials needed here (by Claimant).

**The Structure Expert**

In most situations, a structured settlement broker is involved. He is a considerable resource of information who will be able to clarify unclear or uncertain points. Use this resource since it is available to you at no charge.

Since the late 1970s the federal government has consistently lent support and encouragement to the formation of structured settlements. It has verified the basic tax-free status that qualifies under § 104. It has paved the way to release the original defendant/insurer via a qualified assignment and expanded the assignment process to workers' compensation claims. Armed with the above information, the practitioner should be able to successfully negotiate a structured settlement with the desired tax treatment. "

DATED: _____

The settlement broker does understand that these agreements differ based on details of #1 through #29 above in the following ways stated, _____ Initials needed here (by settlement broker) _____ Initials needed here (by Claimant).

PROPOSED SETTLEMENT

(Initials needed here) by both _____plaintiff and _____defendant.

IT IS SO ORDERED, That the proposed Settlement for case _____ is agreed upon by all.

SIGNATURE OF PLAINTIFF/CLAIMANT: _____

Rita Cagliostro

SIGNATURE OF DEFENDANT/INSURED: _____

Forrest R. Collins

SIGNATURE OF INSURANCE CARRIER: _____

SIGNATURE OF SETTLEMENT BROKER EXPERT: _____

IT IS SO ORDERED, the proposed settlement is now complete.

DATED: _____

(JUDGEMENT SETTLEMENT DATE)

_____

JUDGE

CC: ALL PARTIES

Proposed Settlement                            7 of 7
C18-00425RSM

# STATEMENT OF DAMAGES

CASE NO. 18 – 3573 8

CAUSE NO. 2:18-cv-00425-RSM

Rita Cagliostro (Appellant/Plaintiff)

1. Pain and Suffering, loss of time with kidnapped child, ongoing pain and suffering $1,500,000
2. 12004 SE Foster Road, Portland, OR 97266 (Loss of time to appeal Case No. 1208 09935)
   = $478,569
3. Pain and suffering, due to triggers on mom's birthday October 24, therapies on PTSD, triggers,
   = $1,500,000
4. Loss of income, loss of time for employment, 3 estimates **A.)** National Research Group
   $160/hour, **B.)** King County Research laws cost $100/hour, **C.)** Research Project Manager Salary
   $57,870 / year.
   = $302,387 income loss and growing
5. Hours performed in research since onset October 24, 2013,  @ $160/hour
   = $322,560
6. Travel Costs to and from Sandy, Cregon dealing with confinement of child now teenager.
   = $

| | | | |
|---|---|---|---|
| 7. Court Fees | King County Superior Court | Child Custody—Contempt of Court | |
| 8. Court Fees | Court of Appeals Division One | Child Custody—Contempt of Court | |
| 9. Court Fees | Supreme Court of Washington | Child Custody—Contempt of Court | |
| 10. Court Fees | Western District of Washington | Intentional Negligence | |
| 11. Court Fees | U.S. Court of Appeals For Ninth Circuit | Intentional Negligence | |
| 12. Court Fees | Multhnomah Circuit Court | Contempt of Court | |
| 13. Court Fees | Clackamas County Circuit Court | Contempt of Court | |

14. Disability L fe style set back, @ tax lease apartment, utilities average $400/monthly, Normal
    average costs on a 2 bedroom $1,700/monthly
    =$48,000
15. Loss of Education, time for payment back to U.S. Department of Education
    = $85,000 plus any and all interest accruing.
16. Child turned teenager, loss of time, events, school—time events, NW Childrens Theater acting
    membership, Christmas, Holidays, her pain and suffering.
    = $1,000,000
17. Unwarranted garnished Treasury Offset Program child support $7,644.92 and $10,292
18. Internal Revenue Service; Purchased Bonds affected by the Treasury Offset Program, for the
    years 2014, 2015, ongoing child tax credit loss.

Total Asking Damages Estimate Amount = $ 5,200,000

1